IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREA VAN-ZANDT REISS and DAVID REISS, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 3:23-cv-1675-L |
| THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-9T1, Mortgage Pass-Through Certificates, Series 2007-9T1, incorrectly named The Bank of New York Mellon FKA The Bank of New York's Motion for Summary Judgment ("Defendant's Motion") (Doc. 22), filed March 3, 2025. After careful consideration of the Motion, response, reply, record, appendices, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion.

### I.    Factual and Procedural Background[1]

### A.  Loan Agreement

On or about December 21, 1995, Plaintiffs David Reiss and Andrea Van-Zandt Reiss (collectively, "Plaintiffs") purchased the property located at 5905 Haraby Court, Dallas, Texas 75248 (the "Property"). *See* Def.'s App., Doc. 24-1 at 8-13.[2] On February 23, 2007, Plaintiffs

---

[1] The court recounts the evidence in the light most favorable to Plaintiffs, as the summary judgment nonmovants, and draws all reasonable inferences in their favor in accordance with the standard in Section II of this opinion.

[2] Citations to the record and briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom. "Def.'s App." refers to the "Appendix in Support of Defendant's Motion

**Memorandum Opinion and Order – Page 1**

executed a Texas Home Equity Note (Fixed Rate - First Lien) ("Note") in the amount of $2,066,400.00, originally payable to America's Wholesale Lender. *Id.*, Doc. 24-1 at 14-16. In conjunction with the Note, Plaintiffs executed a Texas Home Equity Security Instrument (First Lien) ("Deed of Trust") (the Note and Deed of Trust are collectively referred to as the "Loan"), granting a security interest in the Property to secure the Note. *Id.*, Doc. 24-1 at 17-35. The Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, solely as nominee for America's Wholesale Lender. *Id.*, Doc. 24-1 at 19. MERS, as nominee, subsequently assigned the Deed of Trust to Defendant, as evidenced by the Assignment of Deed of Trust recorded in the official public records of Dallas County, Texas, as Document No. 201200230236. *Id.*, Doc. 24-1 at 36-38.

### B. Plaintiffs' Default and the Trial Period Plan

Beginning in 2014, Plaintiffs contacted Bayview Loan Servicing, LLC ("Bayview")—the servicer of their Loan at the time—seeking a loan modification. Pls.' Resp. App., Doc. 26-1 at 15-22, 58-162. After Bayview repeatedly made offers to modify the loan but ultimately declined Plaintiffs' attempts to comply with the offers (*see id.*, Doc. 26-1 at 161), on April 28, 2017, Ms. Reiss filed for bankruptcy. Def.'s App., Doc. 24-1 at 3 (Aff. of A. Carbone ¶ 9).[3] On April 22, 2019, an Order Confirming Debtor's Third Amended Plan of Reorganization dated April 15, 2019, (the "Bankruptcy Plan"), was entered in Ms. Reiss's bankruptcy proceedings. *Id.*, Doc. 24-1 at 39-42. Pursuant to the Bankruptcy Plan, Ms. Reiss was to pay Defendant $111,000 within 14 days

---

for Summary Judgment." "Pls.' Resp. App." refers to the "Appendix in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgment."

[3] Plaintiffs assert that the court should deny Defendant's Motion because "Defendant fails to properly identify any facts to support its assertions, the purported facts are inadmissible, and Defendant's affidavit is objectionable." Pls.' Resp. Br. 16 (Doc. 26). The court **overrules** Plaintiffs' objections, as they are conclusory, insufficient, and contrary to the record. Further, the court has closely examined the Affidavit of Andrea Carbone and concludes that it meets the requirements of Fed. R. Civ. P. 56(c)(4).

**Memorandum Opinion and Order – Page 2**

from the date the Bankruptcy Plan was entered, that is, by May 6, 2019, which Defendant was ordered to apply to the Loan. *Id.*, Doc. 24-1 at 41 (¶ q). The Loan History Summary reflects that Defendant received a payment in the amount of $111,000 on July 2, 2019, approximately two months after the deadline set forth in the Bankruptcy Plan. *Id.*, Doc. 24-1 at 58; *see also id.*, Doc. 24-1 at 4 (Aff. of A. Carbone ¶ 11). The Loan History Summary also shows that on or about August 2, 2019, the $111,000 payment was applied to the Loan to advance the due date from August 1, 2012, to June 1, 2013. *Id.*, Doc. 24-1 at 58-59; *see also id.*, Doc. 24-1 at 4 (Aff. of A. Carbone ¶ 11).[4]

On February 14, 2020, per the requirements of the Note, Shellpoint Mortgage Servicing ("Shellpoint") notified Plaintiffs by mail that "effective 02/01/2020, the servicing of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Bayview Loan Servicing, LLC to Shellpoint." *Id.*, Doc. 24-1 at 66.

On September 3, 2020, Shellpoint mailed Plaintiffs an offer to participate in a Trial Period Plan ("TPP") for a loan modification. *Id.*, Doc. 24-1 at 74-79. The TPP spelled out what Plaintiffs

---

[4] In the Original Petition, Plaintiffs allege that Defendant failed to properly credit Plaintiffs' payment of $110,000 to Plaintiffs' account. *See* Doc. 1-3 (Pls.' Orig. Pet. ¶ 34). The only evidence provided by Plaintiffs to support this allegation is a vague, one-sentence statement in the Affidavit of David Reiss that "Bayview failed to timely process the payment and then incorrectly applied the payment to the Loan." *See* Pls.' Resp. App, Doc. 26-1 at 6-7 (Aff. of D. Reiss ¶ 34). Other than this conclusory, self-serving, statement of Mr. Reiss, Plaintiffs point to no evidence to support their assertion that the $110,000 payment was not properly processed. Defendant, however, provides the Loan History Summary showing that on July 2, 2019, it received the payment and on or about August 2, 2019, the $111,000 payment was applied to the Loan. *See* Def.'s App., Doc. 24-1 at 58-59; *see also id.*, Doc. 24-1 at 4 (Aff. of A. Carbone ¶ 11) ("[T]he Loan History Summary indicates that on or about August 2, 2019, the $111,000 payment was applied to the Loan to advance the due date from August 1, 2012, to June 1, 2013."). On this record, the court concludes that Mr. Reiss's self-serving and unsupported affidavit is insufficient to counter and create a genuine dispute of material fact in light of strong evidence to the contrary. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (concluding that self-serving statements were insufficient to overcome summary judgment, particularly when faced with "overwhelming evidence" in opposition); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quoting *Munitrad Sys., Inc. v. Standard & Poor's Corp.*, 672 F.2d 436, 440 (5th Cir. 1982) (finding that self-serving statements in an affidavit were "not the type of 'significant probative evidence' required to defeat summary judgment")).

**Memorandum Opinion and Order – Page 3**

needed to do to successfully complete the trial period and receive a loan modification. Specifically, the TPP provided that, to accept the offer,

> You must make your first Trial Period Plan payment by the first payment due date designated below. If you fail to make the first Trial Period Plan payment by the first payment due date and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked.

*Id.*, Doc. 24-1 at 74.

The TPP further provided that, "[t]o successfully complete the Trial Period Plan, you must make the Trial Period payments below:

- First payment: $18,326.70 by 10/01/2020

- Second payment: $18,326.70 by 11/01/2020

- Third payment: $18,326.70 by 12/01/2020

*Id.*, Doc. 24-1 at 75. The TPP made clear that "TIME IS OF THE ESSENCE." *Id.*, Doc. 24-1 at 74-75. The TPP also included language specifying that Plaintiffs' payments would be deemed timely so long as they were made within the month when due. It stated in bold, below the specific deadlines set forth above, that: "**We must receive each payment[] in the month in which it is due. If you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage loan will not be modified.**" *Id.*, Doc. 24-1 at 75 (original emphasis).

The TPP further provided, "Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement." *Id.*, Doc. 24-1 at 75.

The parties do not dispute that Plaintiffs made the requisite three monthly payments of $18,326.70. Plaintiffs' first payment was made on October 28, 2020. *Id.*, Doc. 24-1 at 80. Plaintiffs

**Memorandum Opinion and Order – Page 4**

made the second payment on November 23, 2020. *Id.*, Doc. 24-1 at 82. Plaintiffs made the third payment on December 21, 2020. *Id.*, Doc. 24-1 at 83.

Defendant applied all three TPP payments to the Loan, as evidenced by the Loan History Summary. *Id.*, Doc. 24-1 at 53; *see also id.*, Doc. 24-1 at 5 (Aff. of A. Carbone ¶ 17). Specifically, the first TPP payment was credited to the Loan on November 2, 2020; the second TPP payment was credited to the Loan on November 30, 2020; and the third TPP payment was credited to the Loan on January 4, 2021. *Id.*, Doc. 24-1 at 53; *see also id.*, Doc. 24-1 at 5 (Aff. of A. Carbone ¶ 17).

On January 6, 2021, two days after Shellpoint credited the third TPP payment to the Loan, Shellpoint notified Plaintiffs by mail that the benefits of the TPP were no longer available. *Id.*, Doc. 24-1 at 85-87. Specifically, Shellpoint advised Plaintiffs, "We entered into a temporary payment plan with the understanding that you would honor it. Because you have not paid as agreed[,] the agreement is now null and void, and the benefits of this agreement are no longer available." *Id.*, Doc. 24-1 at 85. Plaintiffs' representative, Harry Davis (a certified HUD Housing Counselor whom Plaintiffs had retained to negotiate on their behalf with Shellpoint during the TPP process), immediately contacted Defendant to correct the error and confirm the agreement. Pls.' Resp. App., Doc. 26-1 at 47. In his appeal, Mr. Davis confirmed that the "borrower paid all three Trial Payments on time" and informed Shellpoint that "the United States Postal Service indicates that Mr. Reiss'[s] mortgage payment arrived in your office on December 23, 2020. Moreover, copies and receipts indicate a 2-day priority mail was requested by our client to ensure timely delivery. Therefore, we are requesting the loan modification agreement please." *Id.*, Doc. 26-1 at 47. Postal receipts reflect that on December 21, 2020, Mr. Reiss sent the third payment check in

**Memorandum Opinion and Order – Page 5**

the amount of $18,326.70 to Shellpoint by priority 2-day mail, well within the grace period set forth in the TPP. *Id.*, Doc. 26-1 at 57.

Despite Plaintiffs' timely payments in accordance with the terms of the TPP, on December 1, 2022, Shellpoint notified Plaintiffs that they were in default and that $2,233,043.22 was due on or before January 5, 2023, to cure the default under the Loan. Def.'s App., Doc. 24-1 at 88-89. Plaintiffs failed to cure the default and, as a result, the Loan was referred to foreclosure counsel. *Id.*, Doc. 24-1 at 6 (Aff. of A. Carbone ¶ 21). On February 15, 2023, Defendant, by and through its foreclosure counsel, filed an Application for an Expedited Order under Rule 736 on a Home Equity, Reverse Mortgage, or Home Equity Line of Credit Loan seeking an order allowing Defendant to foreclose. *Id.*, Doc. 24-1 at 100-151.

### C. The Instant Lawsuit

On June 14, 2023, in response to the initiation of foreclosure proceedings, Plaintiffs filed their Original Petition in the 68th Judicial District of Dallas County, Texas. In the Original Petition, Plaintiffs assert claims against Defendant for: (1) breach of contract; (2) fraud; (3) fraudulent inducement; and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA"). Doc. 1-3 (Pls.' Orig. Pet.).

Defendant removed this action to federal court on July 27, 2023, contending that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Doc. 1, Notice of Removal. Plaintiffs' Original Petition (Doc. 1-3) remains the live pleading.

### II.   Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

**Memorandum Opinion and Order – Page 6**

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions,

**Memorandum Opinion and Order – Page 7**

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

#### A.  Breach of Contract Claim

Plaintiffs assert a claim for breach of contract premised on allegations that Defendant breached the TPP by terminating the agreement to modify the Loan even though Plaintiffs, in compliance with the terms of the TPP, accepted the offer of a loan modification and timely made all three payments required under the TPP. *See* Doc. 1-3 (Pls.' Orig. Pet. ¶¶ 26-30).  Plaintiffs also assert a breach of contract claim premised on allegations that Defendant breached the Loan by failing to properly process payments. *Id.* (Pls.' Orig. Pet. ¶ 29). Plaintiffs allege that "Defendant's breach has caused Plaintiffs significant economic damages." *Id.* (Pls.' Orig. Pet. ¶ 30).

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (applying Texas law and citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. Civ. App.—Houston [1st Dist.] 2001, no pet.)). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (citation omitted). "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

Defendant moves for summary judgment on Plaintiffs' breach of contract claim. In support, Defendant argues:

> To the extent Plaintiffs' breach of contract claim is based on a breach of the TPP, the claim fails because the TPP is not a binding contract. To the extent Plaintiffs' breach of contract claim is based on an alleged breach of the Loan, the claim still fails because Defendant performed under the Loan, and Plaintiffs are in default under the Loan.

Def.'s Br. 8 (Doc. 23).[5] The court addresses Defendant's arguments in turn.

### 1. *Breach of the TPP*

Defendant moves for summary judgment on Plaintiffs' breach of contract claim premised on Defendant's alleged failure to comply with the terms of the TPP. Def.'s Br. 13-19. Defendant argues that (i) the TPP is an unenforceable "agreement to agree" because it does not include the material terms of the loan modification; and (ii) the TPP is not a valid or enforceable contract

---

[5] Insofar as Defendant argues it is entitled to summary judgment on Plaintiffs' breach of contract claim because they have not "alleged which contract was breached, much less identify (sic) the specific provision of the contract that was breached," *see* Def.'s Br. 13, the court rejects this argument as unfounded.

**Memorandum Opinion and Order – Page 9**

because it is not supported by new consideration. *Id.* In support, Defendant cites numerous cases from various federal district courts in Texas and relies heavily on unpublished decisions from the Eastern District of Texas. Illustrative is the following excerpt from Defendant's brief:

> "To the extent Plaintiff[s] rel[y] on the TPP letter[] and any payments pursuant thereto to support the existence of a contract . . . such effort is unavailing." *Cruit v. MTGLQ Inv'rs, L.P.*, 2019 WL 2070422, at *4 (E.D. Tex. Apr. 9, 2019). This is because "[t]he TPP letter[] do[es] not create a binding contract." *Id.*; *see also Criswell v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 5905192, at *4 (E.D. Tex. Nov. 30, 2017) ("Plaintiffs cannot rely upon the TPP to create a binding contractual obligation to enter into a permanent loan modification. Therefore, the TPP is not a valid, enforceable contract.").

*Id.* at 14.

In response, Plaintiffs contend that the TPP is "a valid and enforceable agreement" and that "fact issues pertaining to the date of payment preclude summary judgment." Pls.' Resp. Br. 10-11 (Doc. 26). For the reasons that follow, the court agrees.

On June 16, 2022, the Fifth Circuit addressed the precise issue presented here, that is, whether a TPP between a lender and borrower was an enforceable contract. *Burbridge v. CitiMortgage, Inc.*, 37 F.4th 1049 (5th Cir. 2022). Neither party references the Fifth Circuit's decision in the summary judgment briefing. Instead, as previously noted, Defendant relies *primarily* on unpublished district court cases decided prior to *Burbridge* holding that the TPP cannot be an enforceable contract because it is not supported by new consideration and is dependent on the lender's discretion. *See* Def.'s Br. 14-19 (citing cases). District court cases, whether published or unpublished, are not binding on the undersigned.

In *Burbridge*, after Brian Burbridge began experiencing financial difficulties, he sought a loan modification. 37 F.4th at 1050. The lender mailed Burbridge an offer to participate in a TPP. After Burbridge made the three monthly payments in compliance with the time period stated in the TPP, the lender "sent him a letter informing him that he was 'ineligible' for the loan

**Memorandum Opinion and Order – Page 10**

modification because he failed to comply with the terms of the TPP" and posted the property for foreclosure. *Id.* at 1051. Burbridge filed suit in Texas state court against his lender for breach of contract. *Id.* Following removal to federal court, the lender moved for summary judgment, and the district court agreed, finding that the "TPP letter does not create a binding contract between the Parties[]" and, even if "Burbridge could rely on the TPP to support a breach of contract claim," he failed to meet the payment deadlines set forth in the TPP. *Burbridge v. CitiMortgage, Inc.*, 2020 WL 7658064, at *4-5 (E.D. Tex. Nov. 18, 2020), *accepted by*, 2021 WL 81697 (E.D. Tex. Jan. 11, 2021), *rev'd and remanded*, 37 F.4th 1049 (5th Cir. 2022).

Like the TPP in this case, the TPP in *Burbridge* provided that "[t]he terms of this offer are accepted and the terms of your [TPP] are effective on the day you make your first trial period payment, provided you have paid it on or before the last day of [January 2019]." *Burbridge*, 37 F.4th at 1050 (original alterations). In addition, as in this case, the TPP made clear that "TIME IS OF THE ESSENCE," and provided that the borrower's payments would be deemed timely so long as they were made within the month when due. *Id.* As here, directly below the specified deadlines, the TPP stated in bold lettering: "**We must receive each payment in the month in which it is due.**" *Id.* (original emphasis). Elsewhere it made clear that "[i]f you fail to make the first trial period payment during the month in which it is due, this offer will be revoked and foreclosure proceedings may continue." *Id.*

The Fifth Circuit reversed the district court's decision that granted summary judgment in favor of the lender on Burbridge's breach of contract claim and remanded the case to the district court for further proceedings. *Id.* at 1053. The court rejected the lender's arguments that the TPP was not "a valid binding contract" and that Burbridge "failed to comply with the TPP's

**Memorandum Opinion and Order – Page 11**

requirement that he make payments in a timely manner." *Id.* at 1052. Construing the TPP "in a

manner faithful to the text[,]" the court explained as follows:

> The TPP provided that "[t]he terms of this offer are accepted and the terms of your [TPP] are effective on the day you make your first trial period payment, provided you have paid it on or before the last day of [January 2019]." Burbridge effectively accepted the terms of the TPP when he made the first trial period payment of $1,293.66 by January 18, 2019.
>
> The parties do not dispute that Burbridge made weekly payments of roughly $350 beginning on December 14, 2018[,] and ending on March 29, 2019. Consequently, each of Burbridge's three aggregate payments of $1,293.66 were completed "in the month in which it [wa]s due," albeit not by the first day of each month. (In fact, Burbridge altogether paid $270 over what the TPP required.)

*Id.* at 1050-1051. Concluding that the terms of the TPP showed that the lender "intended to be

bound by the terms of the TPP" upon performance, the Fifth Circuit noted that Burbridge made

his first monthly payment before the last day of January 2019, and stated, "we have no difficulty

concluding that an enforceable contract was created on January 18, 2019, when Burbridge

completed the first trial period payment of $1,293.66." *Id.* at 1052. In so ruling, the court

highlighted that the lender offered Burbridge "a deadline accompanied by a grace period[,]" which

the lender urged the court to ignore and which the district court failed to consider:

> Grace periods are common features of contracts. They are based on a simple premise: In the real world, there are deadlines, and there are *deadlines*. Some deadlines cannot be missed, while other deadlines operate more as flexible guidelines than rigid mandates. *See, e.g., Lindsey v. Bio-Med. Applications of La., L.L.C.*, 9 F.4th 317, 321 (5th Cir. 2021) ("As anyone who has ever worked in an office environment can attest, there are real deadlines and hortatory ones—and everyone understands the difference between the two."). Grace periods facilitate contractual relationships by making clear which deadlines are aspirational and which are mission-critical. So the grace period at issue here presents no conflict with the TPP's stated deadlines. To the contrary, grace periods and deadlines co-exist by design.
>
> Nor do we see any conflict between the grace period and the statement that "time is of the essence." That statement simply conveys that timing is important to the lender, so borrowers should expect that the lender will rigorously enforce compliance with the stated grace periods.

**Memorandum Opinion and Order – Page 12**

*Id.* at 1052 (original emphasis). In reversing the district court's decision, the Fifth Circuit determined that "Burbridge met his obligations under the TPP by making timely payments. [The lender], by contrast, violated its obligations by refusing to grant the permanent loan modification and instead proceeding with foreclosure." *Id.* at 1053.

In light of the Fifth Circuit's decision in *Burbridge*, the court determines that Plaintiffs have raised a genuine dispute of material fact regarding whether Defendant breached the TPP when it terminated the TPP, notwithstanding Plaintiffs' timely payments. Here, as in *Burbridge*, the TPP stated in bold, below the specific deadlines of October 1, 2020, November 1, 2020, and December 1, 2020, that: "**We must receive each payment[] in the month in which it is due. If you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage loan will not be modified.**" Def.'s App., Doc. 24-1 at 75 (original emphasis). Like in *Burbridge*, the parties do not dispute that Plaintiffs made the requisite three monthly payments, each in amount of $18,326.70, in the month in which it was due. Plaintiffs' first payment was made on October 28, 2020. *Id.*, Doc. 24-1 at 80. Plaintiffs made the second payment on November 23, 2020. *Id.*, Doc. 24-1 at 82. Plaintiffs made the third payment on December 21, 2020. *Id.*, Doc. 24-1 at 83. Postal receipts reflect that on December 21, 2020, Mr. Reiss sent the third payment check in the amount of $18,326.70 to Shellpoint by priority 2-day mail, well within the grace period set forth in the TPP. Pls.' Resp. App., Doc. 26-1 at 57.

Ultimately, the third TPP payment was not credited to the Loan until January 4, 2021. Def.'s App., Doc. 24-1 at 53; *see also id.*, Doc. 24-1 at 5 (Aff. of A. Carbone ¶ 17). On January 6, 2021, two days after Shellpoint credited the third TPP payment to the Loan, Shellpoint notified Plaintiffs by mail that the benefits of the TPP were no longer available. *Id.*, Doc. 24-1 at 85-87. Specifically, Shellpoint advised Plaintiffs, "We entered into a temporary payment plan with the

**Memorandum Opinion and Order – Page 13**

understanding that you would honor it. Because you have not paid as agreed[,] the agreement is now null and void, and the benefits of this agreement are no longer available." *Id.*, Doc. 24-1 at 85.

As in *Burbridge*, viewing the evidence in the light most favorable to Plaintiffs as nonmovants, the court determines that Plaintiffs have provided sufficient summary judgment evidence that an enforceable contract was created on October 28, 2020, when Plaintiffs completed the first trial period payment of $18,326.70; that Plaintiffs met their payment obligations under the TPP by making timely payments; and that Defendant, by contrast, violated its obligation under the TPP by refusing to continue with the loan modification process and instead proceeding with foreclosure. *See Burbridge*, 37 F.4th at 1050-1053.[6] For these reasons, the court **denies** Defendant's Motion for Summary Judgment with respect to Plaintiffs' breach of contract claim predicated on Defendant's failure to comply with the terms of the TPP and to proceed with foreclosure.

### 2. Breach of the Loan

Defendant also moves for summary judgment on Plaintiffs' breach of contract claim to the extent it is based on an alleged breach of the Loan. Def.'s Br. 8. In support, Defendant asserts that, contrary to Plaintiffs' unsupported allegations, the "summary judgment evidence establishes that all payments received by Plaintiffs were properly credited to the Loan." *Id.* at 19.

As previously explained, *see supra* note 4, Defendant has produced undisputed evidence that on July 2, 2019, it received a payment in the amount of $110,000, and on or about August 2,

---

[6] While the court determines that, viewing all evidence in the light most favorable to Plaintiffs as nonmovants, Plaintiffs have raised a genuine dispute of material fact sufficient to defeat Defendant's Motion for Summary Judgment with respect to their breach of contract claim predicated on the TPP, it remains for trial to determine whether Plaintiffs have, in fact, met all steps of the TPP and whether Defendant sent Plaintiffs the documents it was required to sign.

Memorandum Opinion and Order – Page 14

2019, the $111,000 payment was applied to the Loan. *See* Def.'s App., Doc. 24-1 at 58-59; *see also id.*, Doc. 24-1 at 4 (Aff. of A. Carbone ¶ 11). In addition, Defendant applied all three TPP payments to the Loan, as evidenced by the Loan History Summary. *Id.*, Doc. 24-1 at 53; *see also id.*, Doc. 24-1 at 5 (Aff. of A. Carbone ¶ 17). Specifically, the first TPP payment was credited to the Loan on November 2, 2020; the second TPP payment was credited to the Loan on November 30, 2020; and the third TPP payment was credited to the Loan on January 4, 2021. *Id.*, Doc. 24-1 at 53; *see also id.*, Doc. 24-1 at 5 (Aff. of A. Carbone ¶ 17). Thus, Plaintiffs have failed to raise a genuine dispute of material fact that Defendant breached the Loan by failing to properly process payments.[7]

## B. Fraud Claim

Defendant moves for summary judgment with respect to Plaintiffs' fraud claim. Def.'s Br. 20-24. In support, Defendant contends that "Plaintiffs' fraud claim is barred by the economic loss rule, and Defendant's alleged promises of future conduct rather than misstatements of existing fact may not form the basis of a fraud claim." *Id.* at 21.

Under Texas law, a fraud claim requires that (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Lawrence v. Federal Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). To satisfy the injury element, a

---

[7] Defendant also maintains that "Plaintiffs may not prevail on a breach of contract claim based on Defendant's alleged breach of the Loan because Plaintiffs themselves are in default under the Loan due to their failure to make the required monthly payments." Def.'s Br. 20. The court's decision to grant summary judgment on Defendant's first argument obviates the need for the court to address this secondary argument.

Memorandum Opinion and Order – Page 15

plaintiff must be able to show an injury separate from any contractual duty owed. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991). Specifically, "[i]f the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Id.* at 494. "If the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract." *See id.* Moreover, allegations of litigation costs, including attorneys' fees, are insufficient to defeat the economic loss doctrine. *Wiley v. U.S. Bank, N.A.*, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012) (Boyle, J.).

Plaintiffs cite *Shellnut v. Wells Fargo Bank, N.A.*, 2017 WL 1538166, at *11 (Tex. App.—Fort Worth Apr. 27, 2017, no pet. h.), and argue the case demonstrates that summary judgment on fraud claims under the economic loss doctrine is inappropriate here, because their fraud claim arises not from the Note, but from false representations from lenders to borrowers with regard to loss mitigation or loan modification activities, particularly as the plaintiff in *Shellnut* alleged damages outside of the scope of a breach of contract claim. *See* Pls.' Resp. Br. 15-16. While *Shellnut* did involve a fraud and misrepresentation claim related to the modification of a mortgage as in this case, the Fort Worth Court of Appeals allowed claims to proceed that were reliance damages independent of the loan's subject matter. *See Shellnut*, 2017 WL 1538166, at *12. Here, as Defendant correctly notes, *see* Def.'s Br. 12, Plaintiffs have failed to plead that they suffered damages that would not exist but for the contractual relationship with Defendant. Instead, Plaintiffs generally allege they have "suffered damages and injury" as a result of Defendant's alleged fraud. Doc. 1-3 (Pls.' Orig. Pet. ¶ 35).

In addition to Plaintiffs' failure to plead for such damages in the Original Petition, they do not provide competent summary judgment evidence of any damages that would not exist but for

**Memorandum Opinion and Order – Page 16**

the contractual relationship between Plaintiffs and Defendant. In their summary judgment response, Plaintiffs, for the first time, assert they have suffered "damages to their credit score and reputation, out-of-pocket expenses, mental anguish, and lost earnings." Pls.' Resp. Br. 15. As Defendant correctly notes, "[t]he only evidence in support of these claims is David Reiss'[s] affidavit, in which he claims that filing bankruptcy was 'extremely embarrassing for [his] family and damaging to [his] reputation and credit rating' and that Defendant's actions caused Plaintiffs 'significant emotional turmoil, financial difficulties, and many other ill effects.'" Pls.' Resp. App., Doc. 25-1 at 6-8 (Aff. of D. Reiss ¶¶ 3, 6). There is no documentary evidence to support these alleged damages. Even assuming that Mr. Reiss's affidavit is sufficient and competent summary judgment evidence, the court agrees with Defendant that Plaintiffs' fraud claim is still barred. *See, e.g.*, *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 576 (N.D. Tex. 2013) (Lindsay, J.) ("The damages that Plaintiff seeks as a result of the alleged misrepresentations [concerning a loan modification], such as the modified mortgage payments and the money spent on mortgage service assistance, are economic damages that are recoverable under Plaintiff's breach of contract claim. Additionally, as the magistrate judge notes, claims involving mental anguish cannot allow Plaintiff to subvert the effect of the economic loss rule."); *Wiley v. U.S. Bank, N.A.*, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012) (Boyle, J.) (applying economic loss rule despite the plaintiff's affidavit that lender's misrepresentations regarding a loan modification and promises not to foreclose caused damages in the form of attorneys' fees, lost time, emotional distress, and a lower credit rating, because "it is clear that these alleged damages flow solely from the obligations created by the Note and Deed of Trust and would not exist but for the contractual relationship of the parties"); *see also Opheim v. Wells Fargo Bank*, 2016 WL 8715662, at *3 (N.D. Tex. Nov. 9, 2016) (finding plaintiff could not overcome the economic loss rule when he pleaded damages of

**Memorandum Opinion and Order – Page 17**

"harm to credit reputation, credit worthiness, and credit history" because these alleged damages "arise from the purported breach of a duty created under the parties' contract, i.e., the loan documents"), *accepted by*, 2016 WL 8711735 (N.D. Tex. Dec. 16, 2016) (Godbey, J.).

The court, therefore, determines that Plaintiffs' fraud claim is barred by the economic loss rule, and Plaintiffs cannot, as a matter of law, recover from Defendant. Accordingly, there is no genuine dispute of material fact, and the court **grants** Defendant's Motion as to Plaintiffs' fraud claim.[8]

### C. Fraudulent Inducement Claim

Defendant moves for summary judgment with respect to Plaintiffs' fraudulent inducement claim. Def.'s Br. 24-25. Plaintiffs' fraudulent inducement claim alleges that, notwithstanding Defendant's repeated representations that it would modify the Loan and renegotiate the interest rate if Plaintiffs made certain payments in accordance with the TPP, Defendants failed to modify the Loan in accordance with the TPP letter. Doc. 1-3 (Pls.' Orig. Pet. ¶¶ 31-35). Plaintiffs allege that Defendant made these false representations to induce Plaintiffs to rely on these representations and enter into the TPP, which Defendant later breached, causing Plaintiffs to suffer damages and injury by justifiably relying on these representations. *Id.*

Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the

---

[8] Defendant also maintains that Plaintiffs may not prevail on their fraud claim because its promises to modify the Loan constitute promises of future conduct, rather than misstatements of existing fact, and, as such, are not actionable. Def.'s Br. 23-24. Because the court has granted summary judgment with respect to Plaintiffs' fraud claim on Defendant's argument that Plaintiffs' fraud claim is barred by the economic loss rule, the court need not address this secondary argument.

misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *International Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019), *reh'g denied* (May 31, 2019). In a fraudulent inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. *Id.*[9]

In support of its Motion, Defendant relies on the same argument it made with respect to Plaintiffs' breach of contract claim predicated on Defendant's failure to comply with the TPP. Specifically, Defendant asserts that Plaintiffs' fraudulent inducement claim fails as a matter of law because "the TPP letter is not a binding enforceable contract." Def.'s Br. 25. The court previously rejected this argument in denying Defendant's Motion with respect to Plaintiffs' breach of contract claim. *See supra* Sec. III.A.1. Because Defendant relies *solely* on an argument the court previously rejected to support its argument that it is entitled to summary judgment on Plaintiffs' fraudulent inducement claim, the court **denies** Defendant's Motion with respect to this claim.

### D. DTPA Claim

Defendant argues that Plaintiffs' claim for violation of the DTPA fails as a matter of law because Plaintiffs "are not 'consumers' with standing to bring a DTPA claim." Def.'s Br. 27. In support, Defendant asserts that "a mortgagor challenging how an existing mortgage is serviced is not a consumer because the basis of the claim is the subsequent loan servicing . . . activities, rather

---

[9] The Texas Supreme Court has stated that fraudulent inducement claims are not subject to the economic loss rule. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."); *accord Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).

Memorandum Opinion and Order – Page 19

than the goods or services acquired in the original transaction." *Id.* at 26-27 (citation omitted) (ellipses in original).

Plaintiffs did not respond to Defendant's summary judgment motion with respect to this claim. When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed waived or abandoned. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that plaintiff's failure to pursue her "retaliatory abandonment" claim beyond her complaint or in response to a motion to dismiss constituted abandonment) (citation omitted); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (explaining that a plaintiff, "in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue"). Accordingly, Plaintiffs' DTPA claim is deemed abandoned or waived, and Defendant is entitled to judgment as a matter of law on this claim.

In the alternative, even if Plaintiffs had pursued their DTPA claim in response to Defendant's Motion, the court determines that Plaintiffs' DTPA claim fails as a matter of law. As Defendant correctly argues, Plaintiffs "are not 'consumers' with standing to bring a DTPA claim because they do not qualify as consumers." *See* Def.'s Br. 26-27.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* Tex. Bus. & Com. Code § 17.50(a). The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either: (a) engaged in false, misleading, or deceptive acts included in the DTPA's "laundry-list" provision, (b) engaged in an unconscionable action or course of action, or (c) violated a "tie-in" statute; and (3) the violation or unconscionable action was a producing cause of the plaintiff's economic or mental anguish damages. *Cruz v. Andrews Restoration, Inc.*, 364

**Memorandum Opinion and Order – Page 20**

S.W.3d 817, 822 (Tex. 2012). To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint." Tex. Bus. & Com. Code § 17.45(4). "Goods" include "tangible chattels or real property purchased or leased for use." *Id.* § 17.45(1). "Services" are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* § 17.45(2).

The lending of money alone is not a good or service; therefore, a borrower whose sole objective is to get a loan generally does not become a consumer under the DTPA. *See Walker v. Federal Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980)); *Miller*, 970 F. Supp. 2d at 587-88 ("Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA.") (citing *Riverside*, 603 S.W.2d at 174-75). Further, Plaintiffs' DTPA claim is not premised on any deceptive acts regarding the purchase of the Property itself, but how the Loan was administered or serviced, including the denial of their request for modification of the Loan. "Because the plaintiffs sought to modify their mortgage loan and not to acquire, by purchase or lease, a 'good' or 'service,' they do not have a viable DTPA claim." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 477 (S.D. Tex. 2012) (citing cases).

In short, Plaintiffs have failed to raise a genuine dispute of material fact that they qualify as "consumers" under the DTPA and Defendant is, therefore, entitled to judgment as a matter of law on Plaintiffs' DTPA claim. Accordingly, the court **grants** Defendant's Motion with respect to Plaintiffs' DTPA claim.

**Memorandum Opinion and Order – Page 21**

## IV.    Conclusion

For the reasons stated herein, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment (Doc. 22). As genuine disputes of material fact remain for trial with respect to Plaintiffs' claims for breach of contract (insofar as this claim is predicated on Defendant's breach of the TPP) and fraudulent inducement, the court **denies** Defendants' Motion for Summary Judgment as to these claims. As Plaintiffs have failed to raise a genuine dispute of material fact with respect to their claims for breach of contract (insofar as this claim is predicated on Defendant's breach of the Loan), fraud, and violations of the DTPA, the court **grants** Defendant's Motion for Summary Judgment with respect to these claims and **dismisses** them **with prejudice**. Remaining for trial are Plaintiffs' claims for breach of contract (predicated on Defendant's breach of the TPP but not the Loan) and fraudulent inducement. The court will reset the trial of this case and pretrial deadlines by separate order as necessary.

**It is so ordered** this 13th day of May, 2026.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 22**